UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JILL M. EGGERING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  4:10CV821 TIA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration.  The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).  The suit involves an application for Disability Insurance Benefits under Title II of the Social Security Act.

**I.    Procedural History**

On December 5, 2006, Claimant filed an Application for Disability Insurance Benefits under Title II of the Act, 42 U.S.C. §§ 401 et. seq. (Tr. 96-106),[1] alleging disability since October 1, 2001[2] due to panic disorder, shoulder pain (right), and migraines.  (Tr. 92-97, 112).  The application was denied (Tr. 67-73), and Claimant subsequently requested a hearing before an

---

[1]"Tr." refers to the page of the administrative record filed by Defendant with its Answer. (Docket No. 12/filed July 21, 2010).

[2]Claimant previously applied for disability insurance benefits on April 25, 2005, and an ALJ rendered an unfavorable decision on October 4, 2006.  (Tr. 10, 53-64).  On March 30, 2007, the Appeals Council denied Claimant's request for review, and Claimant appealed that decision to the United States District Court for the Eastern District of Missouri.  (Tr. 10).  On November 4, 2008, the District Court affirmed the decision of the Commissioner. Eggering v. Astrue, Cause No. 4:07cv740SNLJ/LMB, 2008 WL 4826308 (E.D. Mo. Nov. 4, 2008).

Administrative Law Judge (ALJ), which was held on July 10, 2008. (Tr. 24-50, 74). Vocational Expert Brenda Young, a qualified vocational expert, also testified at the hearing. (Tr. 44-49, 93-94). In a decision dated August 22, 2008, the ALJ found that Claimant had not been under a disability as defined by the Social Security Act, as of December 31, 2006. date last insured.[3] (Tr. 7-23). After considering the letter from Claimant's counsel, the Appeals Council found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision on March 12, 2010. (Tr. 1-4. 167-70). Thus, the ALJ's decision is the final decision of the Commissioner.

## II. Evidence Before the ALJ

### A. Hearing on July 10, 2008

#### 1. Claimant's Testimony

At the hearing on July 10, 2008, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 29-44). At the outset, the ALJ noted that he had a limited period of time from October 5, 2006 through December 31, 2006 for review to determine whether Claimant qualifies for disability benefits. (Tr. 27). Claimant's date of birth is August 23, 1975. (Tr. 29). Claimant completed ninth grade taking special education classes. (Tr. 33). Claimant is right handed. (Tr. 32). Claimant lives with her husband and her mother. (Tr. 37). Claimant cares for her mother by making sure she eats meals and takes her insulin. (Tr. 38).

---

[3]To be eligible for disability insurance benefits under Title II, Claimant must establish that she became disabled prior to the expiration of her insured status on December 31, 2006. Based on Claimant's previous denial of benefits on October 4, 2006, the ALJ in the instant case was only looking at the period of time from October 5, 2006 through December 31, 2006. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) ("To be entitled to benefits Cox must prove she was disabled before her insurance expired on December 13, 2005.").

Claimant testified that Dr. El-Mashhady, a psychiatrist, treats her panic disorder after Dr. Canale instructed her never to come back to his office because he cannot help her. (Tr. 41-42).

Claimant last worked in 1997 for Caribbean Express managing a car wash, but she stopped working after being in an automobile accident requiring surgery. (Tr. 31). Claimant testified that her panic attacks preclude her from working. (Tr. 36). Claimant experiences an uncomfortable feeling and her heart races whenever she leaves the house unless she takes Xanax. Claimant testified that she has a panic attack once or twice a day. Claimant takes medication to alleviate the attacks, but she experiences confusion from the medication. (Tr. 36). Claimant testified that she takes Xanax three times a day on average. (Tr. 37).

### 2. Testimony of Vocational Expert

Vocational Expert Brenda Young, a vocational consultant and a certified disability management specialist, testified in response to the ALJ's questions. (Tr. 44-49, 93-94). The ALJ asked Ms. Young to characterize Claimant's work for the past fifteen years. (Tr. 45). Ms. Young testified that Claimant's job as a oil change technician was semi-skilled and ranged from medium to heavy weight exertion. Claimant's job as a car porter was unskilled with light weight exertion and the mechanic portion of the job would have been semi-skilled and heavy weight exertion. (Tr. 45).

The ALJ then asked Ms. Young to refer to the RFC and to assume a hypothetical worker able to lift and carry twenty pounds occasionally, ten pounds frequently, stand and/or walk for up to six hours total in an eight-hour day with normal breaks, no climbing such as ladders or scaffolds, only occasional stooping, crawling, or overhead reaching with the dominant arm, no exposure to hazards such as unprotected heights and dangerous machinery, limited to occupations

involving understanding, remembering and following simple instructions and directions, and no more than occasional contact with others on the job. (Tr. 46). The ALJ asked if Ms. Young considered the combined effect of those factors, would any of Claimant's past jobs be possible. (Tr. 47). Ms. Young responded no. (Tr. 47).

Next, the ALJ asked if an individual having the same residual functional capacity and the same vocational capabilities as the claimant including her age, education, and work experience would have the ability to adjust to and perform any other types of work. (Tr. 47). After clarifying that the ALJ limited overhead reaching with the dominant right arm, Ms. Young opined that such individual would be able to perform light janitorial work with approximately 10,000 jobs in the St. Louis metro area and small product assembly type positions with approximately 6,000 jobs in the St. Louis metro area in the light category. Ms. Young noted that her testimony is consistent with the Dictionary of Occupational Titles in the selected characteristics of occupations. (Tr. 47).

Claimant's counsel asked Ms. Young whether her earlier answer would change if she assumed the prior hypothetical question, but "changed the part of, from only occasional contact with individuals, and inserted the level of panic attacks occurring during the course of the day, at least once or twice during each day, to requiring the taking of medication, and avoidance of contact for a period of up to half an hour each time." (Tr. 48). Ms. Young responded that such hypothetical would not be able to maintain work due to absence at unscheduled times. (Tr. 48).

### III. Medical Records

On June 16, 2005, Dr. David A. Lipsitz, Ph.D., conducted a psychological consultation at the request of the State agency. (Tr. 213-18). Claimant reported experiencing "panic attacks all

the time, usually when I'm at the doctors or in a stressful situation. I don't even leave the house without my husband or mother with me." (Tr. 213). Claimant stated that her panic attacks have been occurring for five to six years. Claimant reported that she has always avoided crowds of people throughout her life. Claimant indicated that she becomes really nervous, her heart starts beating fast, and she cannot calm down when she has a panic attack. Claimant's indicated that her panic attacks prevent her from leaving her home. (Tr. 213). Dr. Lipsitz noted that Claimant began seeing Dr. Canale on an outpatient basis in April 2004 and that Dr. Canale was able to end her addiction to Xanax. (Tr. 214). Claimant reported that she attended school until the ninth grade, at which time she "just got frustrated and quit." (Tr. 215). The mental status examination showed Claimant to be somewhat anxious and very agitated, with a bright affect, depressed mood, but no evidence of any suicidal ideations or impulses. Dr. Lipsitz found Claimant's intellectual functioning to be within the average range. Claimant exhibited no memory problems for recent and remote events, her concentration was good, and her insight and judgment were fair. Claimant was able to successfully interpret proverbs, although her thought processes were primarily preoccupied with her anxieties, fears, insecurities, and her inability to leave her house. Dr. Lipsitz diagnosed Claimant with panic disorder and assessed a GAF of 50.[4] Dr. Lipsitz opined that Claimant is in need of ongoing psychiatric treatment combining medication with individual psychotherapy. He stated that hopefully medication can alleviate the anxiety and the panic disturbances so that Claimant can assert herself and make a better adjustment to her

---

[4]A GAF score of 41 to 50 denotes "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), at 34.

environment. (Tr. 215). Dr. Lipsitz opined that Claimant was able to handle her own financial affairs, understand and remember instructions, and sustain concentration and persistence with tasks. (Tr. 216). Dr. Lipsitz noted that Claimant is having extreme difficulty interacting socially and adapting to her environment. (Tr. 216). Dr. Lipsitz further opined that Claimant has moderate restrictions in activities of daily living, marked difficulties in maintaining social functioning, and mild deficiencies of concentration, persistence, or pace. (Tr. 217).

On July 18, 2006, Vincent F. Stock, M.A., completed a psychological evaluation in connection with her application for benefits on referral by her counsel.[5] (Tr. 394-400). Claimant reported taking care of her dogs and her disabled mother, watching television, talking on the phone, swimming in the pool, taking walks, and maybe going to the grocery store as her activities of daily living. (Tr. 396). Once a week, Claimant likes to use her punching bag. Mr. Stock described Claimant's affect as constricted and her mood good, although nervous. (Tr. 396). Mr Stock found her thought process to be intact with no suicidal or homicidal thoughts. (Tr. 397). Mr. Stock noted that Claimant appears to be disoriented at times, as she did not know how to get to the office, and relies on her husband for orientation fifty percent of the time. Mr. Stock administered the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III), which revealed a Full Scale IQ score of 81. (Tr. 397). Mr. Stock described Claimant's level of functioning as in the low average classification and the low average range of intelligence. (Tr. 398). He found that due to low confidence and high anxiety, Claimant's results provided a low estimate of her level of intellectual functioning. (Tr. 398). The mental status examination revealed that Claimant is

---

[5]Mr. Stock's evaluation was performed at the request of Claimant's counsel in anticipation of litigation and not for treatment. (Tr. 394).

guarded, agitated, constricted in affect, anxious and depressed in mood, and soft and pressured in speech. (Tr. 399). Claimant reported that her immediate and recent memory are impaired. Mr. Stock found Claimant's cognitive functioning to be intact, except for serial sevens and serial threes. Mr. Stock diagnosed Claimant with panic disorder and agoraphobia[6] and borderline intellectual functioning[7] and assessed a GAF of 45. Claimant reported her activities of daily living as follows: vacuuming for thirty minutes every day, cooking every day, going to the grocery twice a week, doing laundry once a week, taking care of the dogs on a daily basis, bathing each day, and seeing her doctor and taking medications as indicated. (Tr. 399). Mr. Stock noted that Claimant's social interaction skills appear to be impacted by her mental status, as she reports going out once every six months. (Tr. 400). Mr. Stock found Claimant's ability to attend and concentrate to be impaired as to both serial sevens and serial threes. Mr. Stock opined that Claimant can no longer maintain a full-time position on the open labor market due to her limitations. Mr. Stock found Claimant to be capable of handling funds in how own best interest. (Tr. 400). Mr. Stock opined that Claimant has marked restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. (Tr. 403).

On April 4, 2008, Dr. Afaf El-Mashhady completed a psychological evaluation. (Tr. 535). Claimant reported experiencing anxiety attacks, anxiety disorder, and inability to leave the house.

---

[6]A mental disorder characterized by an irrational fear of leaving the familiar setting of home, or venturing into the open, so pervasive that a large number of external life situations are entered into reluctantly or are avoided, often associated with panic attacks. Stedman's Medical Dictionary 40 (28th ed. 2009).

[7]Borderline intellectual functioning is characterized by an IQ score in the 71-84 range. See DSM-IV at 684.

Claimant reported being unable to work since 1997 after injuring her shoulder in a car accident. (Tr. 535). Mental status examination showed Claimant's insight judgment to be fair. (Tr. 537). Dr. El-Mashhady diagnosed Claimant with panic attacks and generalized anxiety disorder and assessed her GAF to be 50. Dr. El-Mashhady prescribed Xanax as treatment. (Tr. 537). In follow-up treatment on April 25, Claimant reported being able to get up to do what she supposed to do. (Tr. 534). Claimant's mother lives in her house, and she and her husband take care of her mother. Claimant reported the anxiety is preventing her from being able to do what she wants. Dr. El-Mashhady prescribed medications as treatment. (Tr. 534). On May 16, 2008, Claimant reported that her mother has lived with her for the last two and half years, and she takes her out. (Tr. 533). Her mother cannot walk a long distance so she has to take her mother in a wheel chair. Claimant's husband works overtime and nights as a truck driver, and he usually sleeps when he is off work. Claimant has her driver's license. Claimant takes Xanax once or twice a day as treatment for her panic attacks. (Tr. 533). On June 20, 2008, Claimant reported decreased anxiety and still experiencing panic attacks. (Tr. 532). Claimant's mother has diabetes and lives with Claimant and her husband. Dr. El-Mashhady treated Claimant by prescribing medications. (Tr. 532).

In a letter dated June 10, 2008, Claimant's counsel requested Dr. El-Mashhady respond to the questions regarding Claimant's physical capacity to perform tasks necessary to work. (Tr. 538). In relevant part, counsel noted "[a]s the claimant's physician, your medical opinion as to the claimant's ability to perform certain tasks is essential to support the claimant's application for benefits." (Tr. 538). Counsel further requested that Dr. El-Mashhady "attach all relevant treatment notes, laboratory and test results which have not been provided previously to the Social

Security Administration." (Tr. 538). Dr. El-Mashhady found Claimant's GAF to be 55 and noted Claimant to have fear, avoidance, and withdrawn as her symptoms. (Tr. 539). When asked to indicate any tests he had performed on Claimant, Dr. El-Mashhady left all testing options blank. Dr. El-Mashhady found that Claimant can manage benefits in her own interest. (Tr. 539). With respect to mental abilities and aptitude needed to do unskilled work, Dr. El-Mashhady found Claimant to have poor to none ability with respect to maintaining regular attendance, sustaining an ordinary work routine, working in coordination with others without being unduly distracted, completing a normal workday, and respond appropriately to changes in a routine work setting; and fair ability to making simple work-related decisions, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers, and being aware of normal hazards and take appropriate precautions. (Tr. 540). With respect to mental abilities and aptitude needed to do semi-skilled and skilled work, Dr. El-Mashhady found Claimant to have poor to none ability with respect to understanding and remembering detailed instructions, carrying out detailed instructions, setting realistic goals, and dealing with stress of semiskilled and skilled work. With respect to mental abilities and aptitude needed to do particular types of jobs, Dr. El-Mashhady found Claimant to have poor to none ability to travel in unfamiliar place and use public transportation; and fair ability to interact appropriately with general public, maintain socially appropriate behavior, and adhere to basic standards of neatness. (Tr. 540). As result of Claimant's mental impairments, Dr. El-Mashhady found Claimant to have slight functional limitations restricting her activities of daily living, moderate limitations in maintaining social functioning, and often limitations in concentrating and inability to complete tasks in a timely manner due to deficiencies of persistence

or pace. (Tr. 541). Dr. El-Mashhady opined that Claimant's impairments have lasted more than twelve months. (Tr. 542). Dr. El-Mashhady noted that he did not make an assessment regarding how Claimant's limitations interfere with her ability to work including her ability to concentrate, and to deal with work stress. (Tr. 542).

## IV.   The ALJ's Decision

The ALJ found that Claimant met the insured status requirements as of October 5, 2006 and December 31, 2006 was her date of last insured. (Tr. 12). The ALJ found that Claimant has not engaged in substantial gainful activity since October 5, 2006. The ALJ found that through the date of last insured, Claimant had an anxiety disorder, degenerative joint disease, and degenerative disc disease, and the impairments were severe in combination, but no impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 12). The ALJ opined that Claimant's impairments precluded the following:

> lifting and carrying more than ten pounds frequently and more than twenty pounds occasionally; sitting more than six hours in an eight hour workday with normal breaks; and standing and/or walking more than six hours in an eight hour work day with normal work breaks. The claimant could occasionally stoop, crawl and engage in overhead reaching with the dominant arm. The claimant needed to avoid moderate exposure to hazards such as unprotected heights and dangerous machinery. The claimant was limited to understanding, remembering and following simple instructions and directions. The claimant was limited to no more than occasional contact with other people on the job.

(Tr. 13). The ALJ determined that Claimant is unable to perform any past relevant work. (Tr. 21). The ALJ noted that Claimant is a younger individual with a limited education. (Tr. 22).

Considering Claimant's age, education, work experience, and residual functional capacity the vocational expert determined that Claimant can perform a significant number of jobs during the period from October 5, 2006 and through December 31, 2006. (Tr. 22). The ALJ opined

that Claimant was not disabled during the period from October 5, 2006 through December 31, 2006, the date of last insured. The ALJ found that Claimant was not entitled to a period of disability or disability insurance benefits. (Tr. 22).

**V.      Discussion**

In a disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is

found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will affirm the Commissioner's decision as long as there is substantial evidence in the record to support his findings, regardless of whether substantial evidence exists to support a different conclusion. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).

In reviewing the Commissioner's decision, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The claimant's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the claimant's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

Claimant filed an application for disability benefits under Title II. In order to be eligible for disability benefits under Title II of the Social Security Act, Claimant must establish that she became disabled prior to the expiration of her insured status, December 31, 2006. Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006); Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997); Mapes v. Chater, 82 F.3d 259, 261 n.2 (8th Cir. 1996); 20 C.F.R. § 404.130. "When an individual is no longer insured for Title II disability purposes, [the Court] will only consider an individual's medical condition as of the date she was last insured." Long, 108 F.3d at 187

(citation omitted). "Evidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded.'" Cox, 471 F.3d at 907. A non-disabling condition which later develops into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of disability benefits under Title II. Thomas v. Sullivan, 928 F.2d 255, 260-61 (8th Cir. 1991). Evidence of a plaintiff's condition subsequent to the expiration of insured status is relevant only if it relates to the severity of the claimant's condition before the expiration of her insured status. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). A claimant must nonetheless establish that her disability existed prior to the expiration of her insured status. Martonik v. Heckler, 773 F.2d 236, 237 (8th Cir. 1985). New evidence is required to pertain to the time period for which benefits are sought and cannot concern subsequent deterioration of a previous condition. Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997). Here, Claimant's insured status expired on December 31, 2006. Therefore, the ALJ was not required to consider the medical evidence and opinions dated after that date.

Claimant argues that the ALJ's decision is not supported by substantial evidence on the record as a whole, because the ALJ failed to accord adequate weight to the opinion of Dr. Afif El-Mashhady, her treating physician. Claimant further contends that the ALJ failed to properly evaluate her mental impairments and resulting functional limitations.

A.  Weight Given to Treating Physician's Medical Opinions

In analyzing medical evidence, "[o]rdinarily, a treating physician's opinion should be given substantial weight." Rhodes v. Apfel, 40 F.Supp.2d 1108, 1119 (E.D. Mo. 1999) (quoting Metz

v. Shalala, 49 F.3d 374, 377 (8th Cir. 1995)). However, such opinions do "not automatically control, since the record must be evaluated as a whole." Id. An ALJ is free to reject the conclusions of any medical source if those findings are inconsistent with the record as a whole. See Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001). Such opinions may also be discounted when a treating physician renders inconsistent opinions. See Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). "The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).

Dr. El-Mashhady found Claimant's insight judgment to be fair and diagnosed Claimant with panic attacks and generalized anxiety disorder and assessed her GAF to be 50 after seeing Claimant one time. Dr. El-Mashhady completed a mental residual functional capacity assessment procured by her counsel based on his treatment of Claimant on three occasions, April 4, May 16, and June 20, 2008. The ALJ opined that "these treatment notes, and the assessment, do not establish a significant worsening of the claimant's mental impairments during the period prior to the expiration of her date last insured December 31, 2006." (Tr. 20). Moreover, the ALJ noted that Claimant previously reported significant activities of daily living including caring for her mother. Significant daily activities may be inconsistent with claims of disabling pain. Claimant admitted having the ability not only to take care for herself but also care for her mother. See Brown v. Barnhart, 390 F.3d 535, 541 (8th Cir. 2004) (allegations of disability inconsistent with evidence that the claimant was primary care giver for a disabled individual).

Additionally, the relationship between Claimant and Dr. El-Mashhady demonstrates that he was not a "treating physician" under the statute. Generally, an ALJ must address the weight

given to a treating physician's opinion, even if the opinion is ultimately disregarded. See §§ 404.1512(e)(1), 416.912(e)(1). However, not all doctors that examine or treat a claimant are treating physicians under the regulations. See 20 C.F.R. § 404.1502. The regulations provide that a nontreating source is "a physician ... who has examined [the claimant] but does not have, or did not have an ongoing treatment relationship with you." Id. In addition, the ALJ has discretion to find whether a physician is a treating source based in part on whether the physician treated the claimant "only a few times or only after long intervals (e.g., twice a year)." Id. Since Dr. El-Mashhady did not treat Claimant until over fifteen months after the expiration of the relevant time period, he only treated her three times, and his opinions are inconsistent of his treatment of Claimant, Dr. El-Mashhady's opinions should not be accorded great weight. See Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (finding doctor's letter not entitled to controlling weight as a medical opinion of treating source inasmuch as doctor had only met with Claimant on three prior occasions). Cf. 20 C.F.R. §§404.1527(d)(2)(i);416.927(d)(2)(I) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

Likewise, Claimant's argument that because Dr. El-Mashhady's GAF score assessment is consistent with the findings of Dr. Lipsitz and Mr. Stock, his opinion should be accorded weight of a treating physician is without merit. The undersigned notes that both of these opinions were provided prior to the relevant time period and during a period which has already been adjudicated and Claimant found to be not disabled. Eggering v. Astrue, Cause No. 4:07cv740SNLJ/LMB, 2008 WL 4826308 (E.D. Mo. Nov. 4, 2008). Indeed, Dr. Lipsitz found Claimant's intellectual functioning to be within the average range and noted that Claimant exhibited no memory

problems for recent and remote events, her concentration was good, and her insight and judgment were fair. Dr. Lipsitz further opined that Claimant was able to handle her own financial affairs, understand and remember instructions, and sustain concentration and persistence with tasks. The ALJ found Mr. Stock's assessment of borderline intellectual functioning was not supported by the body of his evaluation. Mr. Stock's own testing results showed Claimant's intelligence quotient (IQ) to be in the low average range and that her IQ scores were likely a "low estimate of her present level of intellectual functioning." Further, as noted by the ALJ, Mr. Stock's evaluation was performed at the request of Claimant's attorney in anticipation of litigation and not for treatment.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

B. <u>Mental Impairments and Functional Limitations</u>

Claimant contends that the ALJ failed to properly evaluate her mental impairments and resulting functional limitations.

A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. 404.1520a(c)(3); see <u>Lauer v. Apfel</u>, 245 F.3d 700, 704 (8th Cir. 2001) (holding that

while an ALJ is not limited to considering medical evidence of a mental impairment, the ALJ is required to consider at least some supporting evidence from a professional). In making these findings, the ALJ's decision "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(e)(4). The ALJ's decision also must "include a specific finding as to the degree of limitation in each of the functional areas described in [20 C.F.R. § 1520a(c)(3)]. Id. To the extent Claimant argues that the ALJ failed to rate the degree of functional loss resulting from the alleged mental impairment, this argument is refuted by the ALJ's opinion, in which the ALJ found that at most Claimant has no episodes of decompensations, only mild deficits in activities of daily living, and only moderate limitations in social functioning and concentration, persistence and pace. (Tr. 13). Further, the ALJ found that the record does not document an anxiety disorder resulting in complete inability to function independently outside the area of one's home. (Tr. 13).

Likewise, Claimant's contention "[t]he evidence in the file has an SSA CE report, an IME report, and a treating doctor who all state Jill is and was disabled" does not support a finding of disability. Mr. Stock and Dr. Lipsitz provided opinions concerning Claimant's level of functioning for a period prior to the relevant period in this case, from October 5, 2006 through December 31, 2006. Claimant has already been found not disabled for the period discussed by Mr. Stock and Dr. Lipsitz and their opinions have previously been discredited as discussed above. Accordingly, their opinions have little relevance to Claimant's functioning for the limited time period from October 5, 2006 through December 31, 2006. Likewise, Dr. El-Mashhady never examined Claimant during the relevant period nor is he a treating source. See Randolph, 386 F.3d

at 840. Because El-Mashhady did not treat Claimant until over fifteen months after the expiration of the relevant time period, he only treated her three times, and his opinions were inconsistent of his treatment of Claimant, Dr. El-Mashhady's opinions were not be accorded great weight.

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole. Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**. Judgment shall be entered accordingly.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  6th  day of September, 2011.